IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RAMONA KERMEEN and KEVIN KERMEEN <br><br> Plaintiffs, <br><br> vs. <br><br> STATE FARM INSURANCE COMPANY, <br><br> Defendant. | **8:14CV416** <br><br> **MEMORANDUM AND ORDER** |

This matter is before the court on Defendant's Motion to Bifurcate Bad Faith and Defamation Claims for Separate Trial and to Stay All Discovery on Those Claims, (Filing No. 15) and Plaintiffs' Motion to Compel, (Filing No. 18).   For the reasons set forth below the motion to bifurcate will be granted and the motion to compel denied.


BACKGROUND


Plaintiffs Ramona Kermeen and Kevin Kermeen (the "Kermeens") are husband and wife and own real property, including a residence, in Washington County, Nebraska.   The property and improvements in Washington County were insured under a homeowner's insurance policy (the "Homeowner's Policy") issued by Defendant State Farm Insurance Company ("State Farm").   Plaintiffs also own an inboard/outboard boat insured by State Farm under a boatowner's policy (the "Boatowner's Policy").   Both policies were acquired through the Peleska Insurance Agency in Blair, Nebraska.


On March 7, 2014, a fire occurred at the Washington County property causing significant damage to the residence, Plaintiffs' personal property, and the Plaintiffs' boat which was stored in a garage attached to the residence.   The fire rendered the residence uninhabitable.   Plaintiffs gave notice of loss to State Farm via the Peleska Insurance Agency. State Farm conducted an investigation and during the pendency of the investigation paid the

Kermeens a rental rate of $800 per month for temporary living expenses, but paid nothing for other property losses.

While State Farm was conducting its investigation into the loss caused by the fire, a hail storm hit Blair, Nebraska on June 3, 2014, causing further damage to the Kermeens' residence and outdoor personal property.  The Kermeens timely provided notice of loss to State Farm.  State Farm did not settle the claim.

Plaintiffs allege State Farm has breached the insurance contracts by failing to pay on the claims submitted by Plaintiffs for loses associated with the fire and the hail damage. Plaintiffs further allege they were not made aware of Defendant's reason for denying coverage until State Farm filed its answer in this case

The Kermeens have also asserted claims for defamation and bad faith.  In support of their defamation claim the Kermeens allege the defendant, by and through its agents, contacted the Kermeens' neighbors and other individuals and "communicated that Plaintiffs . . . were being investigated by Defendant and were responsible for intentionally setting fire to their residence for purposes of financial gain."  Filing No. 1, ¶ 34 at CM/ECF p. 10.

In support of their bad faith claim, Plaintiffs assert Defendant put its interest above Plaintiffs' interest by looking for "subrogation" potential against the manufacturer of a whirlpool tub and pump motor – the potential cause of the fire – and began searching for other reasons to improperly deny the Plaintiffs' claim.  Plaintiffs further allege Defendant began an unnecessary and improperly focused investigation to prove Plaintiffs started the fire.

> All of Defendant's efforts to pursue potential subrogation and to establish that Plaintiffs intentionally set the fire were in an effort to delay and avoid payment of the claim, by use of its unequal bargaining position as a large insurance company with significant economic power, which conduct intends to coerce Plaintiffs to incur significant expenses for attorney and expert fees, additional

living expenses and to remain unable to repair and return to their home. Defendant has continued to refuse to settle the fire claim without a reasonable investigation and in reckless disregard for the facts leading to the loss.

Filing No. 1, ¶45 at CM/ECF p. 12.

Plaintiffs also assert Defendant has failed to pay the claim on the Boatowner's Policy without a reasonable investigation into the cause of the loss and has likewise failed to adjust and pay the hail loss under the Home Owner's policy without any reasonable justification. Plaintiffs' complaint alleges several other acts of bad faith with respect to its investigation and processing of Plaintiffs' claims. (Filing No. 1 at CM/ECF pp. 11-16).

State Farm now seeks to bifurcate the discovery and trial of these proceedings, alleging a failure to do so will subject Defendants to prejudice.  Specifically, State Farm seeks to separate discovery and trial of the breach of contract claims from Plaintiffs' remaining claims of defamation and bad faith, with the discovery and trial of the breach of contract claims occurring first.

## ANALYSIS

Fed. R. Civ. P. 42(b) provides:

For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims.  When ordering a separate trial, the court must preserve any federal right to a jury trial.

Trial courts have great discretion in determining when to bifurcate proceedings; the burden is on the party seeking bifurcation to demonstrate it will be prejudiced if the claims are not bifurcated.  See Athey v. Farmers Ins. Exchange, 234 F.3d 357,  362 (8th Cir. 2000).

> In order for a court to grant bifurcation, the party seeking bifurcation has the burden of demonstrating that judicial economy would be served and that no party would be prejudiced by separate trials, based on the circumstances of the individual case.  Novopharm Ltd. v. Torpharm, Inc., 181 F.R.D. 308, 310 (E.D.N.C.1998). Thus, "even if bifurcation might somehow promote judicial economy, courts should not order separate trials when bifurcation would result in unnecessary delay, additional expense, or some other form of prejudice. Essentially, ... courts must balance the equities in ruling on a motion to bifurcate." Laitram, 791 F.Supp. at 115.

Real v. Bunn-O-Matic Corp., 195 F.R.D. 618, 620 (N.D. Ill. 2000).  Courts have considered various factors in determining whether to bifurcate trials.

> In addition to the more general factors set forth in Rule 42(b); i.e., (1) convenience; (2) prejudice; (3) expedition; and (4) economy; a court reviewing a motion for separate trials may properly consider (5) whether the issues sought to be tried separately are significantly different; (6) whether they are triable by jury or the court; (7) whether discovery has been directed to a single trial of all issues; (8) whether the evidence required for each issue is substantially different; (9) whether one party would gain some unfair advantage from separate trials; (10) whether a single trial of all issues would create the potential for jury bias or confusion; and (11) whether bifurcation would enhance or reduce the possibility of a pretrial settlement. See Martin v. Bell Helicopter Co., 85 F.R.D. 654, 658 (D.Col.1980); Gonzalez–Martin v. The Equitable Life Assurance Society, 845 F.2d 1140, 1145 (1st Cir.1988).

Kimberly-Clark Corp. v. James River Corp. of Virginia, 131 F.R.D. 607, 608-09 (N.D. Ga. 1989).

Bifurcation may be appropriate in insurance litigation where the plaintiff is asserting causes of action based on breach of an insurance contract and the tort of bad faith.  A separate trial on the coverage and bad faith claims may be justified where the evidence relevant to the bad faith trial could be prejudicial in the coverage litigation.  See O'Malley v. United States Fidelity and Guar. Co., 776 F.2d 494, 501 (5th Cir. 1985); Karpenski v. American General Life Co., LLC, 916 F. Supp. 2d 1188, 1190 (W.D. Wash. 2012); American National Red Cross v. Travelers Indemnity Co. of Rhode Island, 924 F. Supp. 304, 308 (D.D.C. 1996); Brown v. Ohio Cas. Ins. Co., case no. 06-5018, 2006 WL 2265366

4

(W.D. Mo. Aug. 7, 2006).  However, the bifurcation of breach of contract/bad faith claims is not a rule and the analysis must be performed on a case-by-case basis.

Upon consideration of the factors set forth above, the court has determined Defendant has met its burden of proof and the issues in this case should be bifurcated.  Specifically, the court finds a very real risk of significant prejudice to Defendant if all the claims against it are tried concurrently.  In an attempt to prove its bad faith claim at trial, Plaintiff will likely introduce information irrelevant to the breach of contract claim – such as, any reserves set aside by State Farm for Plaintiff's claim; internal communications regarding State Farm's handling of the claim; its evaluation of the claim; and its motivation regarding the denial of any claim.  While that evidence may prove to be relevant and admissible in the bad faith claim, such information would likely have little, if any, relevance to the breach of contract claim and could create significant prejudice.  Simply put, Defendant's motivation in denying the claim has nothing to do with whether it breached the contact, and the introduction of such evidence would likely inject prejudice into the proceedings and create jury confusion or bias with respect to the breach of contract claim.  This is particularly true in the event Plaintiff introduces Defendant's financial information in an attempt to prove its potential motive for denying Plaintiffs' claims.

Likewise, evidence in support of its claim for defamation also has the potential of creating significant prejudice to Defendant.  Plaintiff will undoubtedly want to introduce evidence regarding Defendant's conduct and statements Defendant's investigators made to third-parties, particularly any statements made by Defendant's investigators insinuating or accusing Plaintiffs of intentionally starting the fire.  Such information could be highly prejudicial and will have no relevance to the breach of contract claim.

Bifurcation of this case will also promote judicial economy.  If the breach of contract claim is resolved in favor of State Farm, Plaintiffs' claims based on bad faith and defamation will likely be moot.  Under Nebraska law, if a breach of contract claim fails or is not "viable," the bad faith claim will likely also fail.  Lynch v. State Farm Mut. Auto Ins. Co.,

275 Neb. 136, 143-44, 745 N.W.2d 291, 297 (Neb. 2008).   See also Wefl v. Northland Ins. Co., 192 F.3d 1169, 1173 (8th Cir. 1999)(because there was no evidence the insurance company denied the plaintiff any benefits due under the insurance policy, the district court did not err in granting judgment as a matter of law on the bad faith tort claim).[1]  Therefore, if Defendant's decision to deny coverage is correct, Plaintiff's claim based on bad faith denial of coverage may fail as a matter of law.  A trial on that issue would be unnecessary and potentially confusing to the jury.  However, if the Plaintiffs' breach of contract claim is ultimately successful, Plaintiffs will recover contract damages immediately and will pursue their claims for bad faith and defamation without substantial prejudice.

To assert a successful claim of defamation in Nebraska, the plaintiff must prove, in part, "a false and defamatory statement concerning the plaintiff."  Moats v. Republican Party of Nebraska, 281 Neb. 411, 421, 796 Neb. 584, 593 (2011).  If it is determined State Farm had a reasonable basis for denying coverage because, as Defendant asserts in its answer, the fire was due to an intentional act of the plaintiffs, any statements made by Defendant's representatives regarding the plaintiffs' role in causing the fire would likely not have been considered false or defamatory.[2]

---

[1] To be clear, the court is not providing a ruling on whether the bad faith claims will fail as a matter of law if the breach of contract claim is denied.  Rather, the court acknowledges there is ample Nebraska law indicating a bad faith claim cannot be brought without a successful breach of contract claim.  That said, in the case of LeRette v. American Medical Security, 270 Neb. 545, 705 N.W.2d 41 (2005) the court considered a bad faith claim against a health insurance company for its alleged wrongful denial of precertification of a medical procedure the plaintiff sought to have covered.  Although the bad faith claim was ultimately deemed to fail as a matter of law, the court considered it without any mention of whether a corresponding breach of contract claim based on that same conduct existed.  The court did not indicate whether that issue had already been decided or was raised at all by the defendants in that case and, thus, did not address the issue before the court in the instant case – whether a successful breach of contract claim is a prerequisite to a bad faith claim.  In any event, the potential prejudice to State Farm is sufficient to warrant bifurcation even if the bad faith claim could survive the failure of the breach of contract claims.

[2] The court does not have full knowledge of exactly what statements Plaintiffs allege were defamatory.  Thus, the court cannot say with certainly a successful defense of the breach of contract claim would completely render Plaintiff's defamation claim moot as a matter of law.  However, based on the complaint, it appears Plaintiffs defamation claim is premised almost entirely on statements made by Defendant's representatives regarding the cause of the fire.  Any defamation claims based on those statements would fail as a matter of law if, in the trial on the breach of contract claims, Defendant is able to prove Plaintiffs intentionally started the fire

For many of these same reasons, discovery in this case should be bifurcated. Investing substantial time and resources in discovering information about the motivation behind Defendant's claim decisions and its financial motives, if any, can and should await a ruling on the breach of contract claim. For instance, a portion of the discovery Plaintiffs have already served on Defendant calls for confidential or privileged information almost certainly not relevant to the breach of contract claim, but which may be relevant to the bad faith claim. See Filing Nos. 17-2 and 17-3. Disputes over protective orders, privilege logs and other inevitable discovery battles related to the good faith and defamation action will undoubtedly delay the preparation of the contract action and delay resolution of that issue. Discovery will be bifurcated, with only discovery pertaining to the breach of contract action continuing. All other discovery will be stayed pending resolution of the breach of contract action.[3]

Accordingly, Plaintiffs' motion to compel, (Filing No. 18), is denied without prejudice to refiling. A substantial portion of the motion to compel appears to seek information related to the bad faith claim and, as such, is not relevant to the first phase of this litigation. Of course, if Plaintiffs believe State Farm has not been responsive to discovery requests related solely to the breach of contract claim, Plaintiffs may file a subsequent motion to compel which the court will promptly address.

Accordingly,

IT IS ORDERED,

1)   Defendant's motion to bifurcate, (Filing No. 15), is granted. This case is severed for trial. The Plaintiffs' breach of contract claim is severed and will be tried first and separately from the remaining claims in Plaintiffs' complaint.

---

[3] In fact, a successful breach of contract suit may encourage settlement of the remaining claims.

2)      Subject to any mutual agreement or stipulation between the parties to the contrary, discovery on all claims but the breach of contract claim is stayed pending resolution of the contract claim.

3)      The Plaintiffs' Motion to Compel, (Filing No. 18) is denied without prejudice to refiling as set forth in the body of this order.

4)      A telephonic status conference will be held with the undersigned on August 14, 2015 at 11:00 a.m. to discuss further progression of this case.  Plaintiffs' counsel shall initiate the call.

Dated this 10th day of August, 2015

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.