IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RAMONA KERMEEN and KEVIN KERMEEN,<br><br>                 Plaintiffs,<br><br>vs.<br><br>STATE FARM FIRE AND CASUALTY COMPANY,<br><br>                 Defendant. | 8:14-CV-416<br><br>MEMORANDUM AND ORDER |

      This matter is before the Court on the plaintiffs Ramona Kermeen and Kevin Kermeen's motion for partial summary judgment (filing 34). For the reasons explained below, this motion will be granted.

## I. BACKGROUND

      The plaintiffs Ramona Kermeen and Kevin Kermeen are a married couple who own real property and improvements—including a house—in Blair, Nebraska. Filing 36 at 2. In 2013, they obtained a homeowner's insurance policy on the house from the defendant, State Farm Fire and Casualty Company. Filing 36 at 2. The policy's effective dates of coverage were December 14, 2013 through December 14, 2014. Filing 36 at 2.

      On March 7, 2014, a fire occurred, damaging the plaintiffs' house and personal property within the house. Filing 36 at 2. The plaintiffs filed a claim with the defendant for the losses. *See* filing 36 at 3. The defendant contends that after it received notice of the fire, it hired Ken Ward, a former fire department chief, to investigate. Filing 39 at 3. According to the defendant, Ward concluded the fire was intentionally set. Filing 39 at 3.

      The defendant asserts that on April 25, 2014, it sent a letter to the plaintiffs' legal counsel stating that an inspection revealed the fire had not been accidental. Filing 39 at 4. On the same date, the defendant contends, it sent a second letter to the plaintiffs' counsel, expressing its view that there was some question as to whether the fire was accidental, whether the plaintiffs intentionally set the fire, and whether the plaintiffs made material misrepresentations or concealments regarding their fire claim. Filing 39 at 4. According to the defendant, the letter also stated that the homeowner's policy would be void if the plaintiffs either intentionally caused the fire or

1

committed some material misrepresentation, concealment, or fraud. Filing 39 at 4. And finally, according to the defendant, the letter stated that

> any action taken by State Farm Fire & Casualty Company or its authorized representatives to investigate the cause of loss, determine the amount of loss or damage, or attempt to adjust any claim arising out of the alleged loss shall not waive any of the terms of the conditions of the policy of insurance described above, nor shall such action waive any of your rights under the policy. If we do not hear from you to the contrary, we will assume that it is acceptable for us to continue handling the case on these terms.

Filing 39 at 4; filing 40-2.

Next, on June 3, 2014, a hail storm damaged certain portions of the plaintiffs' property, including a fence and some outdoor furniture. Filing 36 at 2. The homeowner's policy insured the plaintiffs' house and property against "accidental direct physical loss" caused by "hail." Filing 36 at 2. The plaintiffs made a claim to the defendant for the losses caused by the hail. Filing 36 at 3. The defendant never paid the hail claim. Filing 36 at 3.

According to the defendant, it "consistently and repeatedly" informed the plaintiffs that, if it determined they intentionally caused the fire or misrepresented or concealed facts relating to the fire, the homeowner's policy would be void as of the date of the fire and would not cover the hail claim. Filing 39 at 5. Further, the defendant contends, it informed the plaintiffs that "by investigating the hail claim, State Farm was not waiving its right to void the Policy." Filing 39 at 5. According to the defendant, the plaintiffs agreed that the defendant could investigate the hail claim without waiving its right to void the policy, though the plaintiffs dispute this. *See*, filing 39 at 5; filing 43 at 18–19.

The defendant states that between March and November 2014, it continued to investigate the circumstances of the fire. Filing 39 at 5–6. Specifically, the defendant claims that it requested documents and information from the plaintiffs, investigated the scene of the fire, retained a fire investigator and electrical engineer, and examined the plaintiffs under oath on October 15, 2014 about the fire claim. Filing 39 at 5–6.

On November 24, 2014, the plaintiffs filed the present lawsuit against the defendant, alleging, among other things, that the defendant breached the homeowner's policy by failing to pay the hail claim. Filing 36 at 3. The defendant filed an answer on January 26, 2015, alleging that the plaintiffs intentionally caused the fire and concealed or misrepresented material facts in connection with their fire claim, and that the policy was therefore void. Filing 39 at 6. The defendant asserts that, following the filing of the lawsuit,

it continued to investigate the fire and hail claims, though it does not specify what actions it took to do so, or when. Filing 39 at 6.

On December 14, 2014, the defendant renewed the homeowner's policy for an additional 12-month period, effective until December 13 or 14, 2015. *See*, filing 36 at 3; filing 39 at 8. The plaintiffs paid monthly premiums on the policy via automatic withdrawals. Filing 36 at 3.

On July 17, 2015, the defendant formally denied both the fire claim and the hail claim in separate letters. Filing 36 at 4. The letter denying the fire claim stated that the defendant believed that the plaintiffs intentionally set the fire and made material misrepresentations or concealments regarding the fire. Filing 35-4; filing 39 at 7–8. The letter denying the hail claim stated that the policy was not in effect on the date of the hail storm because it was "void" as of March 7, 2014. Filing 35-3. The defendant also asserts that the letter regarding the hail claim stated:

> Nothing herein constitutes a waiver of the rights of State Farm Fire & Casualty Company under its policy of insurance, nor is it our purpose by this letter to waive any additional defense which further investigation . . . may reveal. State Farm continues to reserve all of its rights and defenses under the policy of insurance or otherwise. Absolutely no waiver or estoppel of any kind or nature is intended, nor may any be inferred or implied.

Filing 39 at 8; filing 35-3.

At the time it sent the letters, the defendant did not refund the premiums the plaintiffs had paid on the homeowner's policy between March 7, 2014 and July 15, 2015. Filing 36 at 5. According to the defendant, it intended to refund the payments, but did not do so at that time due to an administrative mistake. Filing 39 at 10. Additionally, the defendant continued to accept the plaintiffs' monthly premium payments on the renewed policy. Filing 36 at 4. The last payment—which satisfied the full amount of the annual premium under the renewed policy—was made in November 2015. Filing 36 at 4. The defendant contends that it intended to cancel the renewed policy on July 17, 2015, but that it failed to do so due to an administrative mistake. Filing 39 at 10.

On September 18, 2015, the defendant sent the plaintiffs a non-renewal notice, explaining that the homeowner's policy would not be renewed as of December 14, 2015. Filing 36 at 4.

## II. STANDARD OF REVIEW

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to

judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for the motion, and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.*

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Id.* Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id.* But the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. *Id.* In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit. *Quinn v. St. Louis County*, 653 F.3d 745, 751 (8th Cir. 2011). The existence of a mere scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could conceivably find for the nonmovant. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson*, 643 F.3d at 1042.

## III. ANALYSIS

The plaintiffs have brought claims against the defendant for breach of contract, defamation, and bad faith. Filing 1 at 7–15. They have moved for partial summary judgment as to one issue only: the defendant's liability for the damage resulting from the hail storm. Filing 36 at 1.

The defendant does not dispute that the plaintiffs' property was damaged by hail, filing 39 at 4, that hail damage was covered by the homeowner's policy, filing 36 at 2; filing 39 at 2, or that it has not paid the plaintiffs' claim for the hail damage, filing 39 at 5. Rather, the defendant's sole defense to liability for the hail claim is its contention that the policy was not in effect when the hail losses occurred. *See* filing 39 at 11. According to the defendant, the policy was void by its terms as of the fire on March 7, 2014, because the plaintiffs intentionally set the fire and made material misrepresentations or concealments about it. Filing 39 at 12.

The plaintiffs contend that, even assuming they did set the fire and make material misrepresentations or concealments (all of which they deny doing), the defendant has nonetheless waived its right to assert voidness as a defense. Filing 36 at 11. Specifically, the plaintiffs argue that the defendant "treated the Homeowner's Policy as valid and in full force and effect despite

4

[its] claims of an alleged breach" both by failing to return the premiums the plaintiffs paid after March 7, 2014, and by continuing to accept premiums after sending the letters on July 17, 2015 declaring the policy void. Filing 36 at 15.

Under Nebraska law, a waiver is "a voluntary and intentional relinquishment of a known right, privilege, or claim, and may be demonstrated by or inferred from a person's conduct." *D & S Realty, Inc. v. Markel Ins. Co.*, 789 N.W.2d 1, 17 (Neb. 2010). Nebraska courts "have long held that an insurer may waive any provision of a policy that is for the insurer's benefit." *Id.* at 17. Ordinarily, to establish waiver, "there must be a clear, unequivocal, and decisive act of a party showing such a purpose, or acts amounting to an estoppel." *Id.* Waiver can be proven by either "(1) a party's express declarations manifesting the intent not to claim an advantage or (2) a party's neglecting and failing to act so as to induce the belief that it intended to waive." *Id.* at 18.

In the insurance context, "[a]n insurer is precluded from asserting a forfeiture when, after acquiring knowledge of the facts constituting a breach of condition, it has retained the unearned portion of the premium or has failed to return or tender it back with reasonable promptness." *Id.* This is because "[t]he insurer's acceptance of premiums is inconsistent with treating the breach as voiding the policy." *Id.* at 18–19. And the rule applies both when the breach is "of such character as to render the policy void from its inception," and when the breach renders the policy void at some point after it takes effect. *See id.* at 18.

To illustrate, in *Dairyland Insurance Company v. Kammerer*, an insured driver allegedly injured another individual in a March 27, 1980 car accident. 327 N.W.2d 618, 620 (Neb. 1982). After the accident, the insurer discovered that the principal insured had made misrepresentations when applying for the policy, rendering the policy void from inception. *Id.* at 620, 621. The insurer sent a letter to the insured purporting to cancel the policy effective April 22, 1980. *Id.* at 620. It retained the premiums paid between March 27 and April 22. *Id.* In the lawsuit that followed, the insurer argued that because the policy was void from inception, the insurer had no obligation to provide coverage for the injuries resulting from the March 27 accident. *Id.* But the Nebraska Supreme Court held that the insurer had waived its right to assert a voidness defense, explaining that

> [w]hen learning of the alleged fraud, [the insurer] had two choices. Either it could determine that, because of the alleged fraudulent statements made to it, it wished to cancel the policy from its inception and return to [the insured] the entire premium, on the theory that the policy never came into existence, or it

5

could waive the alleged fraud, keep the premium earned to date of cancellation, and accept responsibility under the policy . . . . [The insurer] could not, on the one hand, recognize the existence of the policy and retain a portion of the premium and, on the other hand, deny the coverage afforded by the policy because of alleged fraudulent misrepresentations.

*Id.*

Under Nebraska law, the question whether waiver has occurred is a question of fact. *Siouxland Ethanol, LLC v. Sebade Bros., LLC*, 859 N.W.2d 586, 591 (Neb. 2015). However, if a jury could reach only one reasonable conclusion on the issue, the Court may decide waiver as a matter of law. *Torgerson*, 643 F.3d at 1042; *see also Siouxland*, 859 N.W.2d at 592.

Here, it is undisputed that as of the time the plaintiffs filed their motion for partial summary judgment, the defendant had not refunded any of the premiums the plaintiffs paid after March 7, 2014. Filing 36 at 4; filing 39 at 12. Additionally, it is undisputed that the defendant continued to accept premiums from the plaintiffs even after sending the letters on July 17, 2015 declaring the policy void. Filing 36 at 4; filing 39 at 12. Finally, it is undisputed that the defendant notified the plaintiffs in September 2015 that the policy would not be renewed in December 2015. Filing 36 at 4; filing 39 at 12. Based on these undisputed facts, the plaintiffs argue, the defendant is precluded as matter of law from asserting a voidness defense. Filing 36 at 15.

The defendant, on the other hand, argues that it did not waive its voidness defense for two main reasons. To begin with, in response to the present motion, on February 25, 2016, the defendant refunded the premiums the plaintiffs paid after March 7, 2014. Filing 39 at 16. The defendant contends that doing so creates a genuine issue of material fact as to whether waiver has occurred. Filing 39 at 16. Additionally, the defendant argues that aside from its failure to refund the premiums until after the present motion was filed, its other actions demonstrate that it had no intention of waiving a voidness defense. Filing 39 at 13.

### (a) Effect of returning premiums

First, the defendant argues that because it refunded the premiums to the plaintiffs after receiving the current motion for summary judgment, there is a question of fact as to whether the refund was made with reasonable promptness. Filing 39 at 19. Accordingly, the defendant contends, there is a question of fact as to whether it has waived its voidness defense. Filing 39 at 16.

As explained above, an insurer has waived a voidness defense "when, after acquiring knowledge of the facts constituting a breach of condition, it

has retained the unearned portion of the premium or has failed to return or tender it back with reasonable promptness." *D & S Realty, Inc.*, 789 N.W.2d at 18. Thus, whether the defendant has waived its voidness defense in this case depends on (1) when it acquired knowledge of the facts constituting a breach of condition, and (2) whether it refunded the premiums with reasonable promptness after acquiring that knowledge.

To begin with, the defendant was certainly aware of the facts allegedly constituting a breach of condition by January 26, 2015, when it filed its answer to the plaintiffs' complaint. *See* filing 5. The answer alleged, among other things, that "the fire was caused by intentional acts of the Plaintiffs . . . for the purpose of obtaining insurance benefits under State Farm's insurance policies"; that "the fire was not 'accidental,' as required by State Farm's insurance policies"; that "the Plaintiffs have concealed and/or misrepresented material facts and have made false statements in connection with the fire and their alleged losses"; and that "State Farm's policies are void and there is no coverage under the policies for any damage relating to the Plaintiffs' claims." Filing 5 at 8–9. Furthermore, by the time it filed its answer, the defendant had already completed substantial investigation into the circumstances of the fire: between March and November 2014, it requested documents and information from the plaintiffs, investigated the scene of the fire, retained a fire investigator and electrical engineer, and examined the plaintiffs under oath. Filing 39 at 5–6.[1] Thus, the Court concludes that no reasonable jury could find the defendant was unaware of the facts constituting a breach of condition as of January 26, 2015 at the latest. *See Dairyland,* 327 N.W.2d at 621 ("Obviously, Auto-Owners had knowledge of the alleged 'fraudulent misrepresentation' at least by the time it filed its answer in this case.").

Next, it is undisputed that the premiums were not refunded until February 25, 2016, about 13 months after the defendant filed its answer, and nearly 2 years after the fire itself. *See* filing 39 at 10–11. The defendant's only explanation for this delay is that it intended to return the premiums on July 17, 2015, but failed to do so by mistake. Filing 39 at 10. No reasonable jury could conclude that this kind of administrative negligence is a reasonable justification for the delay in returning the premiums. As the Nebraska Supreme Court has explained, "it is [the insurer's] responsibility to coordinate its own functions." *Lowry v. State Farm Mut. Auto. Ins. Co.*, 421 N.W.2d 775, 780 (Neb. 1988).

---

[1] Although the defendant alleges that it continued to investigate even after November, 2014, it fails to identify what particular actions it took, when it took them, or what further information was needed to reach a conclusion. Filing 39 at 6.

7

Given a 13-month delay without valid justification, no reasonable jury could find that the insurer refunded the premiums with reasonable promptness after acquiring knowledge of the facts allegedly constituting breach.

(b) <u>Effect of other conduct</u>

Second, the defendant contends that—setting aside its belated refund of the premiums—its other actions demonstrate that it had no intention of waiving its right to void the policy. Filing 39 at 13.

According to the defendant, a waiver can occur only where there is "clear, intentional, and unmistakable action." Filing 39 at 13. The defendant argues, therefore, that because "none of [its] actions after the fire suggest that [it] ever *intentionally* waived its right to void the Policy and deny the hail claim," there has been no waiver. Filing 39 at 15. In support of this argument, the defendant points to: the letter it sent to the plaintiffs stating that the policy would be void if it determined the plaintiffs intentionally set the fire or made material misrepresentations or concealments about the fire; the oral representations it alleges it made to the plaintiffs indicating that the hail claim would be denied if the policy was void; its continued investigation of the fire; and its assertion of a voidness defense in its answer. Filing 39 at 15–16.

But under Nebraska law, a party can waive a contractual right without any subjective intention of doing so. As explained above, waiver can be shown either by "(1) a party's express declarations manifesting the intent not to claim an advantage or (2) a party's *neglecting and failing to act* so as to induce the belief that it intended to waive." *D & S Realty, Inc.*, 789 N.W.2d at 18 (emphasis added). Put differently, a party can unintentionally waive a contractual right if its conduct "warrants an inference of the relinquishment of such right." *Davenport Ltd. P'ship v. 75th & Dodge I, L.P.*, 780 N.W.2d 416, 425 (Neb. 2010).

The reasonable promptness rule itself is an application of this principle: an insurer waives a voidness defense when it fails to return premiums with reasonable promptness because "[t]he insurer's acceptance of premiums is inconsistent with treating the breach as voiding the policy." *D & S Realty, Inc.*, 789 N.W.2d at 18–19. In other words, failing to return premiums with reasonable promptness warrants an inference that the insurer intended to waive its voidness defense.

Moreover, the reasonable promptness rule, as articulated by Nebraska courts, does not contemplate weighing the failure to return premiums with reasonable promptness against other all other actions the insurer might have taken. Rather, the rule is phrased in absolute terms: "[a]n insurer is precluded from asserting a forfeiture when, after acquiring knowledge of the

facts constituting a breach of condition, it has retained the unearned portion of the premium or has failed to return or tender it back with reasonable promptness." *Id.* at 18. Thus, by the clear statements of Nebraska courts, the failure to return premiums with reasonable promptness is, by itself, dispositive of the waiver issue.

This reading comports with the reasoning that animates the rule. If an insurer could accept premiums while also retaining its right to void the policy, the insured would unwittingly be left without effective protection, and the insurer would be permitted to collect payments at no risk to itself. *See*, 1 Insurance Claims and Disputes § 2:30; *Am. Gen. Life Ins. Co. v. Salamon*, 483 F. App'x 609, 610 (2d Cir. 2012); *Sun Life Assur. Co. of Canada v. Berck*, 719 F. Supp. 2d 410, 418 (D. Del. 2010); *see also Glens Falls Indem. Co. v. D.A. Swanstrom Co.*, 279 N.W. 845, 847 (Minn. 1938). As one court has explained, the insurer is "not privileged 'to run with the hare and hold with the hounds' until such time as it should become plain on which side its advantage [lies]." *Glen Falls Indem. Co.*, 279 N.W. at 847.

Accordingly, the Court finds that, as a matter of law, the defendant did not return the premiums paid after March 7, 2014 with reasonable promptness, and therefore it has waived its right to assert a voidness defense. Thus, the Court will grant summary judgment for the plaintiffs as to liability for the losses caused by the hail storm.

IT IS ORDERED:

1. The plaintiff's motion for partial summary judgment (filing 34) is granted.

2. Summary judgment is granted for the plaintiffs as to their claim for the hail damage that occurred on June 3, 2014, with the amount of damages to be determined at trial.

Dated this 19th day of April, 2016.

BY THE COURT:

*signature*

John M. Gerrard
United States District Judge